**Entered on Docket**
**November 09, 2009**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**Signed: November 09, 2009**

_____

**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. 08-47480 TD |
| | Chapter 7 |
| GERALDINE L. VAN DAMME, | |
| Debtor. | |
| _____/ | |
| HAMMER 1994 TRUST, et al., | A.P. No. 09-4125 AT |
| Plaintiffs, | |
| vs. | |
| GERALDINE L. VAN DAMME, | |
| Defendant. | |
| _____/ | |

**MEMORANDUM OF DECISION**

In the above-captioned adversary proceeding (the "Bankruptcy Court Action"), Plaintiffs Hammer 1994 Trust, Bill C. Hammer, Trustee, and Bill C. Hammer, individually (the "Plaintiffs") seek a determination that they are entitled to a nondischargeable judgment against the defendant Geraldine L. Van Damme ("Geraldine") pursuant to 11 U.S.C. § 523(a)(6). Geraldine filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  The Plaintiffs filed a countermotion for summary judgment pursuant to Rule 56 Of the Federal Rules of Civil Procedure.[1]  The motions came before the Court on October 5, 2009.  Appearances were stated on the record.  At the conclusion of the hearing, the Court took the motions under submission.  Having now duly considered the evidence presented and argument made, for the reasons stated below, the Court concludes that both motions should be denied.

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

The complaint in the Bankruptcy Court Action (the "Bankruptcy Court Complaint") alleges that, in January 2004, Geraldine and her husband, Armin Dirk Van Damme, ("Armin") (collectively the "Van Dammes") purchased real property located in Las Vegas, Nevada (the "Van Dammes' Real Property"). It further alleges that the Plaintiffs have been the owners of real property located in Las Vegas since 1988 (the "Plaintiffs' Real Property"), and that the Plaintiffs' Real Property is located adjacent to the Van Dammes' Real Property.

The Bankruptcy Court Complaint further alleges that, in the mid-1980s, the developers of the Van Dammes' Real Property erected a stone wall along the common boundary line between the two properties (the "Van Damme Wall").  Thereafter, the developers of the Plaintiffs' Real Property erected a retaining and privacy wall on the Plaintiffs' Real Property, set in from the boundary line by approximately one foot, leaving a gap between the two walls (the "Gap

---

[1]Rules 12(c) and 56 are made applicable to this proceeding by Rules 7012 And 7056, respectively, of the Federal Rules of Bankruptcy Procedure.

2

Land"). The Bankruptcy Court Complaint alleges that, at all times relevant to State Court Complaint, the Gap Land belonged to the Plaintiffs.

The Bankruptcy Court Complaint further alleges that, sometime after April 2004, the Van Dammes trespassed upon the Plaintiffs' Real Property by partially tearing down the Van Damme Wall and constructing a pool grotto, in part, on the Plaintiffs' Real Property. Upon discovering the trespass, on June 22, 2004, the Plaintiffs advised the Van Dammes of their mistake and requested that the work cease. The Van Dammes refused to comply with this request. The Plaintiffs then posted a notice ordering the Van Dammes to cease the trespass and mailed a copy to the Van Dammes. The Van Dammes removed the posted notice, and the work continued. Numerous subsequent efforts by the Plaintiffs to induce the Van Dammes to cease construction on the Gap Land were similarly ignored.

The Bankruptcy Court Complaint further alleges that, on October 1, 2004, the Plaintiffs filed a lawsuit against the Van Dammes in state court in Nevada (the "State Court Action"). A copy of the complaint (the "State Court Complaint") filed in the State Court Action is attached as an exhibit to the Bankruptcy Court Complaint. In the State Court Complaint, the Plaintiffs asserted claims of Trespass, Quiet title, Slander of Title, and Battery against the Van Dammes. They also sought an injunction requiring them to cease construction of the pool grotto and to return the Plaintiffs' Real Property to its prior condition.

3

In response, the Van Dammes filed a counterclaim against the Plaintiffs, asserting claims for quiet title, malicious use of process, and trespass (the "State Court Counterclaim"). The Plaintiffs filed two motions for partial summary judgment, one directed at the quiet title claim and the other directed at the malicious abuse of process and trespass claims. The Van Dammes did not oppose the first motion but did oppose the second one.

On July 8, 2008, the state court issued two orders granting partial summary judgment in favor of the Plaintiffs and against the Van Dammes. The order on the first motion ("PSJ Order One") resolved the Van Dammes' quiet title claim, determining that the Gap Land belonged to the Plaintiffs. It also determined, sua sponte, the claim of quiet title that the Plaintiffs had asserted in the State Court Complaint. The second order ("PSJ Order Two") granted partial summary judgment in favor of the Plaintiffs on the Van Dammes' claims for malicious use of process and for trespass. Copies of PSJ Orders One and Two are attached to the Bankruptcy Court Complaint.

The state court tried the remaining claims over several days in August and October 2008. A final trial date was set for December 22, 2008. On December 16, 2008, Geraldine commenced the above-captioned chapter 7 case. As a result, the State Court Action was stayed as to Geraldine. However, the trial continued and was concluded as to Armin. The state court took the matter of damages under submission.[2]

---

[2]Armin filed his own chapter 7 case in this court before the state court had issued its decision on the amount of damages. However, the Court granted the Plaintiffs' motion for relief from the automatic stay to permit this decision to be effectively

4

The Bankruptcy Court Complaint alleges that Geraldine's conduct in creating and continuing to maintain the above-described trespass on the Plaintiffs' Real Property was willful and malicious and caused injury to the Plaintiffs and to the Plaintiffs' Real Property, giving rise to a claim that should be excepted from her bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(6).

## DISCUSSION

As recited above, the Van Dammes filed a motion for judgment on the pleadings. The Plaintiffs filed a motion for summary judgment. The Court will address each motion in turn.

### A. MOTION FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure provides that a motion for judgment on the pleadings may be filed after the pleadings are closed but must be filed early enough so as not to delay trial. The legal standard applicable to a motion for judgment on the pleadings is the same legal standard applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Holloway v. Best Buy Co., 2009 WL 1533668, #2 (N.D. Cal. May 28, 2009).[3] Rule 8 requires a claim for

_____

issued.

[3] Rule 8 is made applicable to this proceeding by Rule 7008 of the Federal Rules of Bankruptcy Procedure.

5

relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. Proc. 8. As with a motion for summary judgment, "all allegations of fact by the party opposing the motion...[must be] accepted as true, and...construed in the light most favorable to...[the opposing] party. Qwest Communs. Corp. v. City of Berkeley, 208 F.R.D. 288, 291 (N.D. Cal. 2002).

Geraldine contends that the allegations of the Bankruptcy Court Complaint, even if taken as true and construed in the light most favorable to the Plaintiffs, do not satisfy the rigorous standard for nondischargeability under 11 U.S.C. § 523(a)(6) as established by Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998). In Geiger, the Supreme Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64. Moreover, according to Geraldine, the allegations of the Bankruptcy Court Complaint are not sufficiently specific to state a claim for willful and malicious injury and rather are simply conclusory. The Court disagrees.

The Court finds the allegations of the Bankruptcy Court Complaint clearly sufficient to satisfy the Geiger standard. While it may have been negligent or reckless, rather than willful and malicious, for the Van Dammes to begin the construction of the pool grotto on the Plaintiffs' Real Property, their refusal to cease the construction and to dismantle it when informed of the true boundary line can certainly be construed to be willful and malicious. The injury to the

6

Plaintiffs and to the Plaintiffs' Real Property as a result of the Van Dammes' conduct is self-evident.

Geraldine also contends that the allegations of the Bankruptcy Court Complaint are insufficient to state a claim against her as opposed to a claim against Armin. She asserts that it is clear from the PSJ Orders One and Two that Armin was the person who built the wall. She notes that the Bankruptcy Court Complaint blames everything on "the Van Dammes" as a unit, containing no individualized allegations of misconduct by Geraldine. She contends that Nevada law does not permit Armin's misconduct to be imputed to her.

This argument also fails. In referring to the Van Dammes collectively, the allegations of the Bankruptcy Court Complaint necessarily target Geraldine as well as Armin. Although Armin may have performed the physical acts of construction--an evidentiary fact that has yet to be established here--the Van Dammes may still have acted in concert in refusing to remove the construction when they learned of the boundary line mistake. Thus, Geraldine may be liable independently of Armin. Construed in the light most favorable to the Plaintiffs, the allegations state a sufficient claim that she acted in concert with Armin with respect to the refusal to remove the construction.

Finally, Geraldine argues that, in considering the motion, the Court should disregard the exhibits to the Bankruptcy Court Complaint. Normally, a motion for judgment on the pleadings is based solely on the allegations of the complaint and answer. If extrinsic evidence is considered, the motion is transmuted into a motion for summary

7

judgment. <u>See</u> Fed. R. Civ. Proc. 12(d). However, a court may consider exhibits to a complaint consisting of state court pleadings, of which the court may take judicial notice, without transmuting the motion into one for summary judgment. <u>See</u> <u>In re Soto</u>, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998).

Geraldine does not necessary challenge this principle. Instead, she argues that the Court should disregard the state court pleadings as a sanction for Plaintiffs' violation of the automatic stay. She contends that Geraldine's filing of her bankruptcy petition effectively stayed the State Court Action as to Armin as well as her. In support of this argument, she cites <u>Norwest Financial v. Lawver</u>, 109 Nev. 242 (1993), <u>In re Kimmel</u>, 367 B.R. 174, 182 (Bankr. N.D. Cal. 2007), affirmed, 378 B.R. 630, 635-36 (Bankr. 9th Cir. 2007), and <u>In re Watson</u>, 192 B.R. 238, 241 (Bankr. D. Nev. 1996).

None of the cases cited is apposite. <u>Norwest</u> and <u>Kimmel</u> address the attempt of a creditor holding a claim against a married couple, which claim was discharged in the bankruptcy case of one of the spouses, to collect the discharged debt from the after-acquired community property of the nonfiling spouse: e.g., the nonfiling spouse's wages. <u>See</u> 11 U.S.C. § 524(a)(3). They reiterate the well established principle that the discharge of the claim in the bankruptcy case of a single spouse enjoins its collection from the after-acquired community property of both spouses. The <u>Watson</u> court merely makes a passing reference to 11 U.S.C. § 524(a)(3). <u>See</u> <u>Watson</u>, 192 B.R. at 241.

8

The facts here are entirely distinguishable. The Plaintiffs'
claim against Geraldine has not yet been discharged and, if this
proceeding is successful, will not be. Clearly, the filing of a
bankruptcy petition by Geraldine does not give rise to an automatic
stay enjoining actions against Armin. It does give rise to an
automatic stay protecting Armin's share of the community property as
well as Geraldine's. All of the community property constitutes
property of Geraldine's bankruptcy estate. See 11 U.S.C. § 541(a)(2).
However, by proceeding with trial of the State Court Action as to
Armin only, the Plaintiffs were not attempting to collect their debt
from community property, simply to establish their claim. Thus, the
holdings of the cases cited have no bearing on the issues presented
here.

In sum, Geraldine has failed to present a persuasive argument to
support her motion for judgment on the pleadings, and her motion will
be denied.

**B.  MOTION FOR SUMMARY JUDGMENT**

As recited above, the Plaintiffs filed a countermotion to
Geraldine's motion for judgment on the pleadings, seeking summary
judgment on their claim for willful and malicious injury pursuant to
11 U.S.C. § 523(a)(6). Summary judgment is proper when the undisputed
evidence before the Court establishes that there is "no genuine issue
as to any material fact and that the movant is entitled to judgment
as a matter of law." See Fed. R. Civ. Proc. 56, made applicable to
this proceeding by Fed. R. Bankr. Proc 7056.

9

The Plaintiffs base their countermotion on the doctrine of collateral estoppel. They contend that the state court's rulings in PSJ Orders One and Two establish that Geraldine's conduct was willful and malicious injury as a matter of law.[4] They note that the Supreme Court has held that the doctrine of collateral estoppel applies to dischargeability actions. See Grogan v. Garner, 498 U.S. 279 (1991).

In determining whether a state court ruling establishes a nondischargeability claim as a matter of collateral estoppel, the bankruptcy court must give the state court ruling the same preclusive effect it would be given by the state court. Under Nevada law, three questions must be answered in determining whether a ruling in a prior case collaterally estops litigation of the issue in a subsequent case: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" Paradise Palms Community Assoc. v. Paradise Homes, 505 P.2d 596, 599 (Nev. 1973). In addition, the issue decided must have been "actually litigated" and "necessarily determined" in the prior action. Marine Midland Bank v. Monroe, 756 P.2d 1193, 1194 (Nev. 1988). If the issue was "actually litigated" and "necessarily determined" in the prior action, it is conclusive in the subsequent suit, even if the

---

[4]Geraldine initially opposed the Court taking judicial notice of the PSJ Orders One and Two on the ground that they were not authenticated. However, when asked at the hearing whether she challenged their authenticity, she admitted that she did not and simply contended that they did not have a collateral estoppel effect on the issues presented in the adversary proceeding.

10

subsequent suit is based on a different legal theory.  In re Silva, 190 B.R. 889, 892 (Bankr. 9th Cir. 1995).[5]

There is no dispute that the parties to the above-captioned adversary proceeding were also parties to the State Court Action. However, Geraldine contends that the PSJ Orders One and Two cannot be used for collateral estoppel purposes because they do not represent final judgments.  Second, she contends that the issues presented in this adversary proceeding were not "adjudicated" in the State Court Action.  The Court will address each argument in turn.

**1.   Is an Order Granting Partial Summary Judgment Sufficiently Final To Be Used For Collateral Estoppel Purposes?**

As noted above, one of the requirements for collateral estoppel is that the judgment rendered in the prior proceeding is final. Geraldine asserts that an order granting partial summary judgment, by definition, is not final.  In support of this contention, she offers the following quotation from Lee v. GNLV Corp., 116 Nev. 424, 426 (2000): "[A] final judgment is one that disposes of all the issues presented in the case, and leaves nothing for the future consideration of the court, except for post-judgment issues such as attorney's fees and costs."  She notes that an appeal could not be taken from such an order.  Therefore, according to Geraldine, the Plaintiffs may not rely on PSJ Orders One and Two to establish a nondischargeable claim against her under 11 U.S.C. § 523(a)(6).

---

[5]For this reason, the Court finds without merit and disposes of summarily Geraldine's contention that the PSJ Orders One and Two cannot be used for collateral estoppel purposes in this proceeding because they disposed of the Van Dammes' claims against the Plaintiffs' not the Plaintiffs' claims against the Van Dammes.

11

Lee is inapposite. The finality of an order for collateral estoppel purposes was not at issue in that case. It addressed the issue of finality for purposes of appeal. In Lee, an unsuccessful plaintiff had filed a notice of appeal from an order granting summary judgment to the defendant but failed to file a notice of appeal from the judgment itself. The appellee moved to dismiss the appeal on the ground that the summary judgment order was not sufficiently final to be appealable. The Nevada Supreme Court denied the motion, based on the definition of finality contained in the Nevada Rules of Appellate Procedure.[6]

Finality has a different meaning in an appellate context than for purposes of collateral estoppel. In the latter context, an order is sufficiently final to be used for collateral estoppel purposes when a "firm determination" of the issue has been made. See Luben Industries, Inc. v. United States, 707 F.2d 1037, 1040 (9th Cir. 1983), citing Restatement (Second) of Judgments § 13 (1982).[7] Moreover, while the PSJ Orders One and Two are each partial, taken together, they are final. Between them, they dispose of all of the

---

[6]In response to this citation, after the hearing, the Plaintiffs asked the Court to consider Allyn v. McDonald, 117 Nev. 907 (2001) and Lee v. GNLV Corp., 117 Nev. 291 (2001), the appellate decision on the merits of the case cited by Geraldine. They do not explain why they view these decisions as significant to the issues presented here. The Court has reviewed them and does not find them helpful.

[7]Neither party has presented the Court with a relevant Nevada authority on this issue, and the Court has been unable to find any independently. In the absence of such authority, the Court predicts that the Nevada Supreme Court would follow the Restatement.

12

claims asserted in the State Court Counterclaim.   While a summary

judgment order disposing of all the claims in a counterclaim may not

be appealed absent a certification by the court that there is no just

reason for delay, see Century Inv. Corp. v. United States, 277 F.2d

247, 250 (9th Cir. 1960), the Court concludes that such an order is

sufficiently "firm" to be used for collateral estoppel purposes.

**2.    Were Issues Critical to 11 U.S.C. § 523(a)(6) Claim "Adjudicated" in the State Court Action?**

The second issue presented is whether the willful and malicious

nature of Geraldine's conduct was "adjudicated" in the State Court

Action.   A claim for willful and malicious injury under 11 U.S.C. §

523(a)(6) contains three elements: (1) whether the actions taken were

willful, (2) whether the actions taken were malicious, and (3) whether

the actions resulted in injury to an entity other than the debtor or

to property of the entity.   11 U.S.C. § 523(a)(6).   The Plaintiffs

seek to use the doctrine of collateral estoppel to obtain a

determination on all three elements.   They do not seek to use this

doctrine to establish the amount of any recoverable damages, there

having been no determination by the state court on this issue as to

Geraldine when her bankruptcy case was filed.

There are two parts to the question of whether these elements

were "adjudicated" in the State Court Action: (1) whether the issues

were "actually litigated" and (2) whether the issues were "necessarily

determined."

13

### a. Actually Litigated

PSJ Order Two, which dismisses the Van Dammes' claims for trespass and malicious abuse of process, contains no determinations which would entitle the Plaintiffs to a nondischargeable claim against Geraldine on the basis of collateral estoppel. The Order simply dismisses the claims based on the Van Dammes' failure to offer any evidence to support the necessary elements of the claim. The Plaintiffs presumably rely on PSJ Order One, dismissing the Van Dammes' quiet title claim and granting the Plaintiffs' quiet title claim sua sponte. As noted by the Plaintiffs, in PSJ Order One, the state court found as follows:

> The Van Dammes willfully, intentionally and deliberately encroached upon the Trust Property by partially tearing down a wall on Van Damme property. Further, the Van Dammes willfully, intentionally and deliberately utilized portions of the demolished wall, along with remaining portions of their west slumpstone wall, to support a concrete, fiberglass, and concrete structure....The Van Dammes further trespassed onto the Hammer Trust Property by anchoring the pool features, and affixing the Grotto into the east wall of the Trust Property. Each of these actions by The Van Dammes was done willfully, intentionally and deliberately without consent from the Trust and in disregard of warnings to cease such action as next described.

PSJ Order One, p. 4, ll. 11-15, 23-28.

> The court holds that each of the Van Dammes' above-found actions were malicious because those actions were without any just cause or excuse and were substantially certain to cause harm to the Trust Property and to cause emotional distress to the members of the Trust....

PSJ Order One, p. 5, 7-10.

14

> This willful, intentional and deliberate
> misconduct of the Van Dammes caused the title of
> the Trust property to become uninsurable for
> title insurance as a "clear title" due to the
> encroachment; it caused a cloud on the title
> which completely restricted its ready conveyance
> to an arm's length buyer; and it caused an [sic]
> cloud on title which also destroyed its value as
> security for a loan.

PSJ Order One, p. 20, ll. 11-16.

The Van Dammes' failure to file an opposition to the Plaintiffs' motion for summary judgment on this claim does not prevent PSJ Order One from being used for collateral estoppel purposes. They were otherwise active litigants in the State Court Action. Moreover, even a default judgment may be used for collateral estoppel purposes. See In re Nourbakhsh, 67 F.3d 798 (9th Cir. 1995)(default judgment could be used for collateral estoppel purposes); In re Daily, 47 F.3d 365, 368 (9th Cir. 1995). Although Nourbakhsh was decided under Florida law and Daily under federal law, bankruptcy courts in the 9th Circuit have followed their holdings under the laws of their own states. See, e.g., In re Younie, 211 B.R. 367 (Bankr. 9th Cir. 1997)(California law); In re Jung Sup Lee, 335 B.R. 130 (Bankr. 9th Cir. 2005)(Washington law); In re Goddard, 2009 WL 1636387, *8 (2009)(Arizona law). The Court predicts that Nevada would follow these holdings as well.

In sum, the Court concludes that the issues of wilfullness, malice, and resulting injury to an entity other than the debtor or that entity's property were actually litigated and determined in the State Court Action. See In re Zelis, 66 F.3d 205, 208 (9th Cir. 1995).

15

### b.  Necessarily Decided

The second half of the "adjudication" test requires that the issues actually litigated and determined in the prior action be necessarily determined in rendering judgment on the claim or claims in question.  See Segal v. American Tele. & Tele. Co., 606 F.2d 842, 845 (9th Cir. 1979)(per curiam); Restatement (Second) of Judgments § 27 cmt. j (1980).  As noted above, the findings giving rise to the state court's determination that the Van Dammes acted willfully and maliciously were contained solely in PSJ One.  The only claim ruled upon in PSJ One was the quiet title claim.

An action to quiet title is brought to establish a party's title to real property against an adverse claimant.  To obtain such a ruling, under California law,[8] the following elements must be established: "(1) a description of the real property that is the subject of the action, (2) the title of the plaintiff as to which a determination...is sought and the basis of the title, (3) the adverse claims to the title of the plaintiff against which a determination is sought, (4) the date as of which the determination is sought, and (5) a prayer for the determination of the title of the plaintiff against the adverse claims."  Madrid v. J.P. Morgan Chase Bank, N.A., 2009 WL 3255880, *5 (E.D. Cal.).

The state of mind or motive of the party making the adverse assertion of title to the real property is clearly irrelevant to the

---

[8]Again, in the absence of authority to the contrary, the Court will predict that the Nevada Supreme Court would follow California law in this respect.

16

determination of a quiet title claim. Thus, the state court's findings and holdings with respect to the Van Dammes' willful and malicious conduct were not "necessarily determined" in connection with the quiet title claim and thus may not be used for collateral estoppel purposes in the Bankruptcy Court Action.

## CONCLUSION

Geraldine's motion for judgment on the pleadings will be denied. The Plaintiffs' motion for summary judgment will also be denied.

The allegations of the Bankruptcy Court Complaint are sufficient to state a claim under 11 U.S.C.§ 523(a)(6). By referring to certain actions performed by the Van Dammes, the allegations were necessarily directed against Geraldine as well as Armin. They did not have to separately state their allegations against Geraldine and Armin. Finally, the PSJ Orders One and Two will not be disregarded as a sanction for the Plaintiffs' violation of the automatic stay. There was no such violation. In any event, the Court has not relied on the findings and conclusions in the PSJ Orders One and Two in ruling on this motion. Counsel for the Plaintiffs is directed to submit a proposed form of order in accordance with this decision.

The motion for summary judgment will also be denied. The PSJ Orders One and Two contain findings and conclusions that are sufficiently "firm" to be used for collateral estoppel purposes. The elements of a claim under 11 U.S.C. § 523(a)(6)--willfulness, malice, and injury to person or property--were "actually litigated" in the State Court Action. However, they were not "necessarily determined" in the context of a determination of a quiet title claim. Counsel for

17

Geraldine is directed to submit a proposed form of judgment in accordance with this decision.

<u>END OF DOCUMENT</u>

18

<u>COURT SERVICE LIST</u>

Mariam S. Marshall
Law Offices of Marshall and Ramos
350 Frank H. Ogawa Plaza #600
Oakland, CA 94612

Christina Ann.Marie DiEdoardo
Law Office of Christina DiEdoardo
201 Spear Street #1100
San Francisco, CA 94105

19